UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDWARD ALLEN COVINGTON

    Applicant,

v.　　　　　　　　　　　　　　　　　　　　CASE NO. 8:22-cv-2547-SDM-SPF
　　　　　　　　　　　　　　　　　　　　　　**DEATH CASE**
SECRETARY, Department of Corrections,

    Respondent.
_____/

## **ORDER**

Covington is incarcerated within the Florida Department of Corrections under three sentences of death based on the murders of Lisa Freiberg (his girlfriend), Zachary (her seven-year-old son), and Heather Savannah (her two-year-old daughter). Also, Covington serves concurrent terms of fifteen years for three counts of mutilation of a dead body and five years for cruelty to an animal for bludgeoning to death the family dog. After four witnesses testified on the first day of trial, Covington advised that he wanted to plead guilty. The following day — after Covington's being evaluation by two medical experts — the trial court accepted both Covington's guilty plea to all charges and his waiver of a penalty hearing. The convictions and sentences were affirmed on direct appeal, *Covington v. State*, 228 So. 3d 49 (Fla. 2017) ("*Covington I*"), and the subsequent denial of post-conviction relief was affirmed. *Covington v. State*, 348 So. 3d 456 (Fla. 2022) ("*Covington II*"). Covington does not challenge his convictions.

Covington applies under 28 U.S.C. § 2254 for the writ of habeas corpus and challenges only his sentences. An earlier order (Doc. 7) (footnote omitted) both appoints the Office of the Capital Collateral Regional Counsel to continue their representation of Covington and directs the respondent to file a limited response.

> The respondent should initially respond to the application by filing a motion to dismiss limited to those specific grounds he contends (1) fail to assert a claim that is reviewable in federal habeas corpus (e.g., state law claims, Fourth Amendment claims that received adequate state review, etc.), (2) are not fully exhausted, or (3) are not reviewable because of a procedural bar.

The respondent both admits the application's timeliness (Doc. 16 at 26) and moves to dismiss portions of ground one, all of grounds two and three, and the assertion of cumulative error. Pending are the motion to dismiss, Covington's opposition, and the respondent's reply. (Docs. 17, 18, and 21)

The application enumerates three grounds: trial counsel rendered ineffective assistance both during the penalty phase and at sentencing (Ground I), Covington's severe mental illness precludes imposition of the death penalty (Ground II), and Florida's courts failed to conduct a proportionality review (Ground III). Also, in the supporting memorandum (but neither alleged as a ground in the application nor enumerated) Covington contends that his death sentences are unconstitutional based on cumulative error. Ground I includes several sub-claims, but neither the application nor the supporting memorandum nor the motion to dismiss nor the opposition nor the reply (Docs. 2, 11, 17, 18, and 21) assign a consistent alphanumeric designation for the sub-claims. This omission increases the possibility of violating *Clisby v. Jones*, 960 F.2d

925 (11th Cir. 1992), which requires a district court to resolve all claims for relief raised in a Section 2254 application. However, the supporting memorandum reveals that Covington pursues the same claims of ineffective assistance of counsel that he raised on the post-conviction appeal, during which he enumerated seven sub-claims under Ground I as "A–G." This order will — and henceforth the parties must — refer to the sub-claims using the post-conviction appeal's alphanumeric designation.

## I. EXHAUSTION AND PROCEDURAL DEFAULT

An applicant must present each claim to a state court before presenting the claim to a federal court. "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese,* 541 U.S. 27, 32 (2004) (citing *Duncan*). "Fair presentation" requires alerting the state courts to both the law and the facts that support the federal nature of the claim. The failure to properly exhaust a claim in state court causes a procedural default of the claim. The reason for both requiring exhaustion and applying procedural default is explained in *Shinn v. Ramirez*, 596 U.S. 366, 378–79 (2022) (brackets and ellipsis original):

> State prisoners, however, often fail to raise their federal claims in compliance with state procedures, or even raise those claims in state court at all. If a state court would dismiss these claims for

>their procedural failures, such claims are technically exhausted because, in the habeas context, "state-court remedies are . . . 'exhausted' when they are no longer available, regardless of the reason for their unavailability." *Woodford v. Ngo*, 548 U.S. 81, 92–93, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006). But to allow a state prisoner simply to ignore state procedure on the way to federal court would defeat the evident goal of the exhaustion rule. *See Coleman*, 501 U.S. at 732, 111 S. Ct. 2546. Thus, federal habeas courts must apply "an important 'corollary' to the exhaustion requirement": the doctrine of procedural default. *Davila*, 582 U.S., at ___, 137 S. Ct., at 2064. Under that doctrine, federal courts generally decline to hear any federal claim that was not presented to the state courts "consistent with [the State's] own procedural rules." *Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000).
>
>Together, exhaustion and procedural default promote federal-state comity. Exhaustion affords States "an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights," *Duckworth v. Serrano*, 454 U.S. 1, 3, 102 S. Ct. 18, 70 L. Ed. 2d 1 (1981) (*per curiam*), and procedural default protects against "the significant harm to the States that results from the failure of federal courts to respect" state procedural rules, *Coleman*, 501 U.S. at 750, 111 S. Ct. 2546. Ultimately, "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without [giving] an opportunity to the state courts to correct a constitutional violation," *Darr v. Burford*, 339 U.S. 200, 204, 70 S. Ct. 587, 94 L. Ed. 761 (1950), and to do so consistent with their own procedures, *see Edwards*, 529 U.S. at 452–453, 120 S. Ct. 1587.

As a consequence, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). *See also Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1271, 1345 (11th Cir. 2004) ("The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.") (citations omitted); *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the

appropriate jurisdiction of the federal rights which allegedly were violated."). An applicant must present to the state court the same claim presented to the federal court. *Picard v. Connor*, 404 U.S. at 275 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). "Mere similarity of claims is insufficient to exhaust." *Duncan*, 513 U.S. at 366.

**Ground I Sub-Claim A:**

Trial counsel was allegedly ineffective for neither objecting nor rebuting the state's medical diagnosis of antisocial personality disorder and not objecting to labeling Covington as a "psychopath." The respondent admits (Doc. 17 at 31) that this sub-claim is exhausted and entitled to a review on the merits.

**Ground I Sub-Claim B:**

Trial counsel was allegedly ineffective for not arguing as a mitigating factor Covington's insanity at the time of the offense. The respondent admits (Doc. 17 at 32) that this sub-claim is exhausted and entitled to a review on the merits but not to the extent that the claim is construed as challenging the definition of "insanity," which is a matter of state law. As *McCullough v. Singletary*, 967 F.2d 530, 535–36 (11th Cir. 1992), explains, an evidentiary ruling raises no question of constitutional magnitude.

> A federal habeas petition may be entertained only on the ground that a petitioner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved. *Bronstein v. Wainwright*, 646 F.2d 1048, 1050 (5th Cir. 1981). State courts are the ultimate expositors of their own state's laws, and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a

> state's criminal statutes by the courts of the state except in extreme cases. *Mendiola v. Estelle*, 635 F.2d 487, 489 (5th Cir. 1981).

*See Krawczuk v. Sec'y, Fla. Dep't of Corr.*, 873 F.3d 1273, 1287 (11th Cir. 2017) (applying *McCullogh*).

Covington's and the respondent's papers show agreement that the alleged ineffective assistance of counsel regarding the application of Florida's insanity statute is an exhausted and reviewable claim but not the state's definition of insanity. Consequently, this sub-claim is limited to the application of the state's insanity statute, but the state's definition of insanity is not reviewable.

**Ground I Sub-Claim C:**

Trial counsel was allegedly ineffective for not developing and presenting evidence of substance abuse as a mitigating factor and not explaining the relation between substance abuse and mental illness. The respondent admits (Doc. 17 at 33) that this sub-claim is exhausted and entitled to a review on the merits.

**Ground I Sub-Claim D:**

Trial counsel was allegedly ineffective (1) for not obtaining a PET scan instead of a qEEG test, which was ruled inadmissible, and (2) for not renewing his pre-trial motion to admit the qEEG test results after Covington waived a penalty jury. The respondent admits (Doc. 17 at 34) that this sub-claim is exhausted and entitled to a review on the merits regarding counsel's alleged ineffective assistance for pursuing a qEEG test and not a PET scan, but the respondent correctly argues that whether the results of the qEEG test were admissible evidence is a matter of state law.

As a general principle, an alleged violation of state law fails to assert a constitutional issue because the admissibility of evidence in state court is largely a matter for the state to decide without federal intervention. *See Marshall v. Lonberger*, 459 U.S. 422, 438, n.6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules."); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); *McCullough v. Singletary*, 967 F.2d 530, 535–36 (11th Cir. 1992) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."). *See also Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1290 (11th Cir. 2012) (" 'Necessary to [Reese's] success . . . is the proposition that the Florida Supreme Court erred in construing the laws of Florida. In fact, [Reese's] claim involves a pure question of state law. Questions of pure state law do not raise issues of [federal] constitutional dimension for federal habeas corpus purposes.' . . . A precedent of a state court about an issue of state law can never establish an entitlement to a federal writ of habeas corpus.") (internal citation omitted) (brackets original).[1] Consequently, whether the results of the qEEG test were admissible into evidence is a matter of state law not reviewable in this habeas action.

---

[1] Additionally, Covington argues that his due process and equal protection rights were violated when during his trial in Hillsborough County the state judge refused to allow into evidence the qEEG test results but in Miami-Dade County a state judge allowed into evidence the qEEG test results. *Covington II*, 348 So. 3d at 472, holds that this issue is procedurally barred "[b]ecause [it] should have been raised on direct appeal."

**Ground I Sub-Claim E:**

Trial counsel was allegedly ineffective for not moving to "sanitize/redact" Covington's videotaped interrogation. The respondent admits (Doc. 17 at 37) that this sub-claim is exhausted and entitled to a review on the merits.

**Ground I Sub-Claim F:**

Trial counsel was allegedly ineffective for waiving pre-trial motions and objections after Covington chose to plead guilty and for waiving a penalty phase jury. The respondent moves to dismiss this sub-claim based on procedural default.

Pre-trial proceedings included many defense motions to limit the state's evidence, particularly motions both to suppress Covington's statements when he was in the hospital and to exclude evidence of collateral crimes or prior bad acts. On the first day of trial but after trial had started, Covington decided to plead guilty. In his application Covington elaborates as follows (Doc. 2 at 29):

> Instead of continuing to object, defense counsel waived objection to all of the evidence challenged pretrial. Public Defender Julie Holt testified at the evidentiary hearing her team was very broad in setting out full and complete waivers of all pretrial litigation in the plea form they prepared days before Mr. Covington pled guilty, in anticipation of just such a move.

*Covington II*, 348 So. 3d at 473, determined that trial counsel's decision not to continue to object to the evidence was a reasonable strategic decision. Consequently, this sub-claim was denied on the merits — not based on a procedural defect — and is entitled to a review on the merits.

**Ground I Sub-Claim G:**

Trial counsel was allegedly ineffective for not interviewing and presenting evidence about Covington's enduring abuse when he was a child. The respondent admits (Doc. 17 at 37) that this sub-claim is exhausted and entitled to a review on the merits.

**Ground II:**

Covington alleges (1) that under the "evolving standards of decency" he is exempt from the death penalty because of his severe mental illness, because his case is not the most aggravated and least mitigated, and because the process for determining his sentence was inadequate and (2) that trial counsel was ineffective for not adequately developing these allegations. The respondent moves to dismiss this ground based on procedural default.

*Covington II*, 348 So. 3d at 465–66, concurs with the post-conviction court's ruling that Covington procedurally defaulted the "evolving standards" argument "because this claim should have been raised on direct appeal." This ruling meets the "plain statement" requirement under *Harris v. Reed*, 489 U.S. 255, 261 (1989), which requires that the state court opinion contain "a plain statement that [the state court's] decision rests upon adequate and independent state grounds." (internal quotation omitted) Consequently, Covington procedurally defaulted the first component of this ground, and whether he can overcome the procedural default is discussed below.

However, the state courts denied the merits of the ineffective assistance of counsel component of this ground in a unified analysis of Ground I, Sub-Claim B. Consequently, this component of Ground II is entitled to a review on the merits.

**Ground III:**

Covington erroneously alleges that the Florida Supreme Court failed to conduct a proportionality review of his death sentences; *Covington I*, 228 So. 3d at 69, determines "that the death sentences are proportionate." Nevertheless, this ground fails to assert a federal question that is reviewable under habeas corpus. *See Pully v. Harris*, 465 U.S. 37, 45 (1984) ("Examination of our [earlier] cases makes clear that they do not establish proportionality review as a constitutional requirement."); *Walker v. Georgia*, 555 U.S. 979, 129 S. Ct. 481, 482 ("Proportionality review is not constitutionally required in any form.") (Thomas, J., concurring in denying petition for *certiorari*). Moreover, Florida no longer engages in a proportionality review. *Lawrence v. State*, 308 So. 3d 544, 551–52 (Fla. 2020). Consequently, the respondent is entitled to the dismissal of Ground III.

**Cumulative Error:**

The respondent moves to dismiss any purported claim based on cumulative error and argues that, "[b]ecause there is no United States Supreme Court precedent regarding cumulative error claims in federal habeas, such claims do not provide an avenue for federal habeas relief." (Doc. 17 at 39) The respondent cites *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 n.3 (11th Cir. 2012), which relies on non-Eleventh

Circuit cases. However, instead of accepting the identical argument the respondent asserts here, *Morris* determines that the "cumulative error claim clearly fails in light of the absence of any individual errors to accumulate." 677 F.3d at 1132 n.3. On the contrary, *Insignares v. Sec'y, Dep't of Corr.*, 755 F. App'x 1273, 1284 (11th Cir. 2014),[2] recognizes *Morris's* limited statement and explains that "[u]nder the cumulative-error doctrine, a sufficient agglomeration of otherwise harmless or nonreversible errors can warrant reversal if their aggregate effect is to deprive the defendant of a fair trial." *See also Chambers v. Mississippi*, 410 U.S. 284, 290 n.3 (1973) (accepting Chambers' cumulative effect argument). Consequently, Covington is not precluded from asserting entitlement to relief based on cumulative error.

### III. "CAUSE-AND-PREJUDICE" TO OVERCOME PROCEDURAL DEFAULT

As discussed above, the failure to properly exhaust each available state court remedy by not 'fairly presenting' a federal claim to the state courts in the proper procedural manner causes a procedural default of the unexhausted claim. A failure to exhaust does not finally preclude review if the applicant can overcome the default. *See Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."). The reasoning

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

for the procedural default doctrine and the procedure for overcoming the procedural default is explained by *Shinn*, 596 U.S. at 379–80 (ellipsis and italics original):

> "Out of respect for finality, comity, and the orderly administration of justice," *Dretke v. Haley*, 541 U.S. 386, 388, 124 S. Ct. 1847, 158 L. Ed. 2d 659 (2004), federal courts may excuse procedural default only if a prisoner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law," *Coleman*, 501 U.S. at 750, 111 S. Ct. 2546. To establish cause, the prisoner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). Then, to establish prejudice, the prisoner must show not merely a substantial federal claim, such that " 'the errors at . . . trial created a *possibility* of prejudice,' but rather that the constitutional violation 'worked to his *actual* and substantial disadvantage.' " *Id.*, at 494, 106 S. Ct. 2639 (quoting *United States v. Frady*, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982)).

*Accord O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."). Consequently, to demonstrate "cause" for his procedural default, Covington must show an "external factor" was the reason for his failure to comply with Florida's procedural rules, and to show actual prejudice Covington must demonstrate that the alleged errors so infected the trial that his resulting conviction violates due process. Covington presents no "cause and prejudice" argument.

As an alternative to showing both cause and prejudice, Covington must show that dismissal of his procedurally defaulted claims will result in a "fundamental miscarriage of justice," an especial difficulty because Covington must demonstrate his "actual innocence" of the death penalty. *Schlup v. Delo*, 513 U.S. 298, 323 (1995).

- 12 -

Additionally, to meet the "fundamental miscarriage of justice" exception, Covington must show constitutional error coupled with "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324.

Covington asserts entitlement to review of the merits of the "evolving standards of decency" component of Ground II as "necessary to correct a fundamental miscarriage of justice . . . . ." (Doc. 18 at 6) The post-conviction court noted that "[t]here is no legal authority which would permit or require this Court to find the Eighth Amendment categorically bars Defendant's execution because he suffers from severe mental illness." (Doc. 4, Appendix C at 56) *Covington II*, 348 So. 3d at 466, concurs,[3] and Covington cites no authority showing the decision is incorrect. Consequently, because Covington fails to overcome the procedural default, the "evolving standards of decency" component of Ground II is procedurally barred from federal review.

The respondent's motion to dismiss (Doc. 17) is **GRANTED IN PART AND DENIED IN PART**. Ground I(B)[4] and (D),[5] and Grounds II[6] and III are

---

[3] Also, *Covington II,* 348 So. 3d at 466, notes that Covington "raises the issue on appeal 'to preserve this specific subclaim should current or future law or cases require a claim of incompetency at time of execution be raised at this stage of postconviction proceedings.'"

[4] This sub-claim is dismissed to the extent that it is construed as challenging Florida's *definition* of insanity.

[5] This sub-claim is dismissed regarding the admissibility of the qEEG test results.

[6] The portion of this ground that alleges an exemption from the death penalty based on the evolving standards of decency is procedurally barred.

**DISMISSED**.  This action proceeds with Ground I (A), (B),[7] (C), (D),[8] (E), (F) and (G), Ground II,[9] and the cumulative error argument.  The respondent has **SIXTY DAYS** to respond to the remaining grounds, Covington has **FORTY-FIVE DAYS** to reply, and the respondent has **FOURTEEN DAYS** to either file or waive a sur-reply.  The clerk must **ADMINISTRATIVELY CLOSE** this case and re-open the case when briefing is complete.

ORDERED in Tampa, Florida, on October 2, 2024.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[7] This sub-claim is limited to the *application* of Florida's insanity statute.

[8] This sub-claim is limited to whether counsel was ineffective for pursuing a qEEG test and not a PET scan.

[9] The ineffective assistance of counsel portion of this ground is not procedurally barred.